419-0817-WC City of Springfield Appellant v. The Workers' Compensation Commission Rick L. Shelton, Appellee. Okay, Mr. Mueller, you may proceed. Thank you, Your Honor. May it please the Court, Counsel. Obviously, I represent the City of Springfield. The portion of the Commission decision finding a causal relationship between the accident and this guy's right elbow problems is just wrong. It's definitely against the manifest weight of the evidence, and I would say that at least one Commissioner got that one right. For the Commission majority to be believed, you have to believe that three treating doctors and the EMG doctor all missed an elbow injury and cubital tunnel, and I don't buy that. Dr. Rotman was correct. If you look at the medical records from 2015 from five different medical facilities or doctors, there is no mention of the right elbow or cubital tunnel. Only mentioned is the right hand and wrist, and we have to keep in mind here that this guy, Mr. Shelton, continued to work. It wasn't like he was sitting home doing nothing. If there had been a trauma to the elbow causing a cubital tunnel there, there would have been symptoms and complaints, and there were not. Mr. Mueller, what did Dr. Neumeister opine on that issue? What did he? Yeah, what did Neumeister? Did he support that, or did he go the other way? Setting aside his speculative answers, Your Honor, he specifically said the elbow was not directly traumatized. He said he had no documentation that the accident caused or contributed to the cubital tunnel. So he said the original problem at the wrist seemed to resolve, but for whatever reason, it cropped up at the elbow. He said the wrist and the elbow are a few, excuse me, are a little bit of a distance apart. So in answering the question, how did the injury cause a cubital tunnel, you have to theorize how that happened, and that's what we don't do. We don't theorize, we don't speculate, and I think that's what the commission, the arbitrator, and then the commission majority did in this case. They did not look at what Dr. Neumeister specifically said about this. The information he had from the claimant, what they did do is rely on the speculative answers that he gave. Now the commission found the claimant credible, did they not? They believed his version of events and his complaints. Didn't they believe the claimant was credible? I have to think they did believe, I mean, the majority did. Right. The dissenter obviously did not specifically said that in her dissent, but we're not going, we're reviewing the majority decision, not the dissenting opinion, you understand that? Of course. Okay. So your answer is yes, they found him credible, correct? As I said, they had to find him credible to find in his favor. What I'm saying is the medical records don't support that. The actual records from the doctors that he saw do not support his version that he is credible. And specifically, as I just went through it, to your question, your honor, Dr. Neumeister's testimony does not support finding this elbow injury related to the accident. Dr. Neumeister did not find any problem with the elbow when he first saw this guy. He didn't find it until January of 2016, which what, nine and a half months after this guy supposedly got hurt in March of 2015. So there's a big gap in there and you have to believe, or I have to believe that something happened. Something else happened on that elbow because it did not show up on the EMG in September. It was not found by Dr. Watowa in October. When you say something else, you were talking about objecting to going into the realm of speculation and conjecture. When you say something else must have happened, is that not speculation and conjecture? Well, I guess it maybe it is your honor, but I don't think so. Because as I was saying, if you don't have a cubital tunnel finding on the EMG in September, you don't have it found in October and you don't have it found in December, it's not there. It's not there until January. I think it's just a logical conclusion that something must have happened in the interim. Did Newmaster address any of that? The time frame between the accident and the, I guess what you'd call the exhibition of the complaint on the elbow? I don't think he actually addressed the time frame. Okay, but did he talk about like it migrated to the elbow or something you were saying earlier? That's what I was about to get to your honor. Yes, he said that the original problem was at the ribs and seemed to resolve, but for whatever reason, it flared up at the elbow. This is not a continuation of the same problem. The original problem was that the dorsal ulnar cutaneous branch in the hand and then the cubital tunnel is the ulnar nerve in the elbow. The doctor specifically said that the claimant still had the numbness even after the original problem resolved because the nerve had been irritated at the elbow. He doesn't answer it in terms of time frame. He just says, hey, what he had in the hand from this accident when the log rolled on his wrist or his hand, that resolved itself. But for whatever reason, and he couldn't figure out what reason, there was a problem with the cubital tunnel at the elbow. When did the plaintiff testify he first experienced tingling and numbness in the two digits of the ulnar side of his right wrist? I'm sorry, I missed the beginning of your question. When did the plaintiff testify that he first began to experience numbness and tingling in the two digits on the ulnar side of his right wrist? He said he felt that immediately when the log rolled on his hand. Didn't Neumeister testify that if that occurred immediately after the injury, that may or could have caused him to believe that the accident caused or contributed to the claimant's carpal tunnel syndrome? No. He said that if the symptoms started immediately after the accident and continued all the way through, then he would have to say yes, I think was his answer. My point is that I said before that Dr. Neumeister specifically said that even after the original problem went away, resolved, he still felt numbness because he had had problems developed in the ulnar nerve. What we're dealing with here, in my opinion, Your Honor, is we have two different nerve branches, if you will, that innervate the same area of the hand. I think what the doctor was saying is this guy couldn't differentiate, Mr. Shelton couldn't differentiate, but yeah, he was still having, after the resolution of the original problem, he was still having problems there because it was in a different area that was causing those problems, that being the ulnar nerve at the elbow. I don't think it's the same thing. I don't think it was a continuation of problems from the same nerve. That's where the doctor's comment about the continued doesn't add up. Now, let me just interject there, Mr. Mueller, because I want to go back to Justice Hudson's question early on, and that had to do with the credibility of the claimant, and it's my understanding the arbiter found the claimant's testimony was consistent with all of the credible medical records, not such that it was, and thus the credibility, but that it was consistent ultimately with the other medical records. Does that make sense? Do you agree with that proposition? Well, I don't agree with the proposition. I do agree that that's what was said. Well, it was a finding. A finding by the arbitrator and thus the majority commission. Yeah, no, I agree they did say that. I don't agree with it. I don't think, as I put in my brief, I don't think the claimant's testimony was consistent at all with the medical records. His testimony, I don't think his testimony was consistent with how the arbitrator and commission found that this injury occurred to the elbow. I don't think his testimony was simply that this log rolled on his hand, and as Dr. Neumeister said, he didn't have any evidence that this accident directly traumatized the elbow or caused or contributed to the cubital tunnel. And I still don't understand how they can get around that, but my point is to your question, no, they may have said that, but that is not how I interpret all of the medical when you compare it to Mr. Shelton's testimony. And he gives, the argument is maybe that he gives the same history consistently, but he doesn't give the same consistent history as to when this happened, and he never says that he hurt the elbow. It's always the hand. If you look at all the medical from the beginning, Dr. Sharma, it's always the right hand. It's even the fifth digit and the fourth. In October, he says it's the third, fourth and fifth digits. Mr. Mueller, let me ask you a point in question that seems to be the theme of the week, and you're an experienced litigator, appellant's attorney. You've been before us a number of times. If you have a case that turns on the credibility of the claimant, the claimant testifies and the commission believes the claimant, are we supposed to say, no, Mr. Mueller, you're right. The claimant is not credible. What do we do with them? And how do we do it? Well, you obviously, your honor, the five of you have to look at the medical evidence to see if it supports what they say, if he is credible. And there are cases, as I cited one in my brief, of where the court has said, no, he wasn't credible. The commission didn't get that one right. So just, I guess saying that happens, but you have to look at it. And I still think the is what Dr. Neumeister said. Well, you seem to be saying it so many words, if I understand, there's sort of a missing link here to explain what actually happened. But how do we know what the missing link is? You said something else must have happened. How do we know what the something else is? We don't know what it is. We just don't. Well, actually, this is interesting. Because we deal with this issue all the time. And we're judging the commission's finding and where there's findings of credibility, we have this great deference. Your argument is that it's consistent with the medical records. So we the court has every right to go back and judge for ourselves whether or not the arbitrator and the commission was correct in finding that is consistent with all the medical records. So we can actually go back and review those ourselves. So it's a little different than a credibility question. Is that summing that up correctly? Yeah, I mean, we're still dealing with a manifest way to the evidence here, of course. But it's what I'm trying to say, I guess, maybe I didn't get it clearly enough. You know, your job, I think, is to look at the evidence to make sure there's some evidence to get. And what, among other things, finding that this guy was credible, Mr. Shelton was credible. Okay, assuming my phone would quit ringing. Assuming that he's found to be credible, and he did testify that he twisted his arm. Is there any medical reference? There is no to twisting, right? That's correct. Okay, so is there any medical evidence that the twisting of the arm would lead to the elbow condition? Is there any doctor that said yay or nay on that? Not the way he testified. Mr. Shelton testified as to twisting. No doctor said that would cause cubital tunnel. Okay. Thank you. Thank you. In summary, in 2015, there's no mention of elbow trauma in any of the medical. There's no mention of elbow complaints. There's no mention of cubital tunnel. And the EMG did not find cubital tunnel. And then as I said earlier, the commission decision is wrong, contrary to the medical against the manifest weight. And that should be reversed with regard to causal relationship. I don't think I have much time left here. No, we're getting close. Obviously, I brought up issues of notice and accident. On with regard to notice, the commission decision was based on Brad O'Neill's conversation with the claimant on a day neither of them was sure. Anyway, I'm done. The red light. You'll have time and reply. Thank you. Thank you, Mr. Scrow. Is it? Very well done, Justice. Thank you. Thank you. Please, the court. Greg Scrow for the appellee, Mr. Rick Shelton. And I do have prepared remarks, but I'm going to skip directly to questions and answers to Dr. Neumeister and Dr. Rotman. Dr. Neumeister was asked, assuming the force of the rolling trunk not only twisted Mr. Shelton's arm, but forced his elbow to strike the ground while twisted outward. Could that cause an injury to the right ulnar nerve? Answer, yes. Dr. Rotman, what if the force of the tree coming down had thrown his elbow into the ground? Yes. If he were to have thrown the inner aspect of his elbow into the ground and acutely bashed against the ulnar nerve at the elbow, that would be a direct blow to the inner elbow that could cause acute cubital tunnel. Let me remind you that the description of the accident is undisputed. Mr. Shelton testified. Three other people were there from the city, including his supervisor. The city did not call anyone who witnessed the accident to testify. The medical records are consistent. And in answer to Justice Hudson's question, at the record, page 57, arbitrator Pullias says that, that the petitioner is credible and the medical records are consistent. And something I'd like to point out is that each and every medical record describes this accident. Dr. Neumeister found it highly significant that the symptoms began with the accident, that they persisted, and that they were relieved by his procedure. He also said that was causation. And I think that's important because there is no evidence that Mr. Shelton had symptoms prior to the occurrence. There is no evidence of any intervening cause for these symptoms. And there's no evidence to the contrary of the symptoms being relieved. In other words, a big tree rolls over his hand, forces his arm to the ground with pretty significant force. He gets symptoms and Dr. Neumeister fixed them. So both doctors here are telling us, yeah, it could happen like that. I'd also like to talk a little bit about the timing issue, about when we first started seeing reports in the medical records of ulnar issues. And I think it's important that you look at who he went to and when he went to them. So he went to his primary care doctor, Dr. Yap. Dr. Yap sent him for an EMG. Why would Dr. Yap send him for an EMG? Possible neuropathy. Dr. Trudeau's report shouldn't just be read at the end for his findings. You can find this at page 143. He talks about weakness on repeated testing of ulnar innervated intrinsics of the right hand compared to the left. He talks about hypesthesia in the right hand and ulnar aspect. I looked up hypesthesia, it's numbness. And his finding is right dorsal ulnar cutaneous neuropathy. The ulnar nerve branches after it comes through the elbow. This is an ulnar nerve injury. I don't think even the doctors are so expert that they will say how the nerve gets hurt. They'll say the nerve is hurt, let's fix it. And that's what Dr. Neumeister very matter of fact opinion seemed to be, which, okay, he bashed his elbow into the ground, symptoms started, but they were diagnosed as an ulnar nerve injury. I did a release and they got better. So what we're really talking about and you all hit on it is credibility. Every single one of Rick Shelton, and Rick Shelton is just a working guy. He cuts down trees. His boss saw the accident. He toughed it out for a couple of weeks. He told the safety officer, the safety officer admitted it. The safety officer said it was in April. That's in the record. He went to get treatment and he kept toughing it out. And for five years, the city has done nothing but deny his claim. Dr. Neumeister says it's related, not enough. Dr. Rotman says it's related, not enough. Arbitrator Pullia says it's related, not enough. The commission says it's related, not enough. I hope today is enough. So I do want to come back to Mr. Shelton's testimony. In the record, pages 358, 359, and 361, he says, my arm hit the ground. Page 359, while demonstrating what finally on 361, there was quite a bit of force from probably from the elbow through the wrist. So this is all undisputed. The cases where the commission has been found to have been wrong on credibility have been like the Imperial Bondware case where the petitioner contradicted himself in the record three times. That's not here. It may seem unusual that a log rolling over your hand causes an ulnar nerve injury, but it's not contradicted. It happened and we have both opinion doctors saying, yeah, it could happen that way. So to make a long story short, I think that the credibility of the petitioner was found by the commission. They agreed that an accident happened, that the injury was related to the accident and that the employer was on notice. And I would ask you to affirm that decision. Thank you, Council. Mr. Mueller, would you like to reply? Thank you, Your Honor. One thing I'd like to say, which I did not, was not able to do originally, was in this particular case, obviously accident was always an issue and Mr. Shelton did not call any of the at least three people that were there when this supposedly happened to testify on his behalf. I mean, I think that's important. The other thing is, of course, he did not fill out his paperwork regarding any accident until October of 2015. And even at that time, he did not put down that he had an injured elbow. He did testify, as I think we covered before, that he, there was a twisting at the time this neither doctor has that in their records. The, again, there's no mention of the elbow at all in 2015. He did not complain about it. The evidence is, I think, clear that if he had had an elbow injury, which caused cubital tunnel, there would have been symptoms, there would have been complaints, and there were none. And on that, with Dr. Neumeister, I go back to what he said, that the elbow issue, the nerve issue at the elbow came up for whatever reason. Not that it was there initially, it came up for whatever reason later on. And that's where I think the arbitrator and the commission speculated and came up with the idea that, well, this must have happened, but it is hard for me to see how it could have happened at the time of this accident, assuming this accident happened. And he did not have any symptoms, no symptoms. Nobody said anything in the medical records about the elbow until Dr. Neumeister came up and found something in January of 2016, as I said, about nine and a half months after the accident happened. Now, that's too long. Mr. Mueller, do you want to respond to Mr. Skro's reminder on page 361 that there was a reference by Mr. Shelton to the elbow having been hit with force to the ground? It hit the ground. He said, as the log was coming towards him, his elbow hit the ground. It wasn't that the log caused the elbow to hit the ground, because of what it saw coming towards him, he was trying to keep himself from getting hurt is how I interpreted it, and put his hand and arm down, and then that log rolled onto his right hand, on the dorsal part of his right hand. That's what that's what he's talking about. How does that matter? I'm lost. Why does it matter if he was avoiding an accident when he hit his elbow on the ground? Or if the log forced his elbow to hit the ground? Well, I don't. I mean, it was still there in the course of maybe an art. I'm sorry. There may be. Go ahead. I'm sorry. There may be an argument that if the log forced his elbow to the ground, it traumatized the elbow. But if his elbow is already down, and it just rolls on his hand, I don't see that that's what happened. But again, if his elbow was traumatized in this event, why didn't he have symptoms and complaints? That's, that's the sticker on that part. I was just, my understanding of what Justice Kavanaugh's question was, and your response to it that it wasn't that his elbow was forced to the ground by the by the log, but that he was avoiding the accident. So I'm, I'm envisioning a, a quick move to get his arm away. And it jammed it into the ground that way. So the trauma or the force may have been equal by either cause. And I thought you were making a distinction between, you know, being injured by pulling it away, or injured by the log actually impacting his elbow. But you've answered it for me. Thank you. Thank you. And again, there are no symptoms or complaints. So how can we say he injured his elbow in that accident? I just don't think you can. I think you have to find that it was not injured in the accident, and find that part of the commission decision against the manifest way to the evidence. Thank you. Okay. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement. A written disposition shall issue.